IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

---------------------------------------------------------------x
In re                                                          :
                                                               :   Involuntary Chapter 11
                                                               :
WHITE STAR PETROLEUM, LLC                                      :   Case No. 19-12145-JDL
                                                               :
                                  Putative Debtor.             :
---------------------------------------------------------------x

**DECLARATION OF DAN BAFIA IN SUPPORT OF MOTION
OF WHITE STAR PETROLEUM LLC FOR ENTRY OF AN
ORDER DISMISSING THE INVOLUNTARY CASE**

I, Dan Bafia hereby declare as follows:

1. I currently serve as the Chief Operating Officer of White Star Petroleum, LLC ("WSP LLC" and together with its affiliates, "White Star"). I have been in this role since May 2018. Previously, I served in other roles of increasing responsibility at WSP LLC. Prior to joining White Star, I served in various geology-focused roles at a number of oil and gas companies. I submit this declaration (this "Declaration") in support of the *Motion of White Star Petroleum LLC for Entry of an Order Dismissing the Involuntary Case* (the "Motion to Dismiss")[1] filed by WSP LLC in the above-captioned involuntary chapter 11 case.

2. As Chief Operating Officer of WSP LLC, I am generally familiar with the Debtors' day-to-day operations, financial affairs, business affairs, and books and records. In addition, I and employees that report to me are primarily responsible for White Star's business discussions with its trade vendors. Over the past several months, my responsibilities have

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion to Dismiss.

SC1:4953361.2

included negotiations with trade vendors to preserve White Star's business relationships even as it was losing liquidity.

3. As described in more detail in the *Declaration of Jeffrey J. Zanotti in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"), by April 15, 2019, it was clear that White Star faced an imminent, potential Event of Default under its RBL Credit Agreement. Thereafter, on April 30, 2019 the RBL Agent declared an event of default under the RBL Credit Agreement and swept much of White Star's operating cash. Accordingly, I understand that White Star urgently planned for chapter 11 throughout the second half of April and all of May.

4. Beginning in mid-April 2019, White Star began a marketing process to sell its business. I understand that White Star and its advisors believe that marketing White Star's business as a going concern should maximize the sale proceeds, and that a successful going concern sale is the only way to preserve the maximum number of jobs for White Star's employees and result in the assumption of many of the contracts between White Star and its local and trade creditors. Accordingly, as discussed in the First Day Declaration, White Star's bankruptcy preparations were particularly focused on obtaining debtor-in-possession financing that provided sufficient liquidity to permit an organized bankruptcy that would facilitate a going concern transaction.

5. After the RBL Agent swept White Star's operating cash, White Star was unable to make most payments to trade creditors or other disbursements because its secured lenders would only authorize critical expenditures. While White Star had been making payments to many of its trade vendors—including the Petitioning Creditors—prior to May 1, those payments stopped after the cash sweep. I informed many of White Star's trade vendors by email

that White Star was holding payments while it reviewed its situation. Soon thereafter, I learned that speculation of White Star's impending bankruptcy had spread throughout its vendor community, and my understanding is White Star's impending bankruptcy was common knowledge by mid-May.

6. In response to the interruption of payments and rumors of bankruptcy, I was repeatedly contacted by Trent Latshaw, the controlling owner of two of the Petitioning Creditors, to inquire if White Star was planning to commence bankruptcy. I also spoke with Ron Davis of Baker Hughes regarding White Star's holdback of payments. In those conversations, I separately informed Mr. Latshaw and Mr. Davis that White Star continued to evaluate all of its options. In one of my conversations with Mr. Latshaw, he expressed to me concerns about the treatment of mechanics' liens given the unfavorable outcome his companies had experienced in prior bankruptcy cases. Approximately one week before filing the Involuntary Petition, Mr. Latshaw contacted me again, asked me if White Star's management had recently met with White Star's board of directors, and when I indicated it had, asked me if White Star was planning imminent bankruptcy proceedings. I informed him that White Star continued to evaluate its options and no final decision had been made. I had no further discussions with the Petitioning Creditors before they filed the Involuntary Petition on May 24, 2019.

I, the undersigned, declare under penalty of perjury under the laws of the United States that, to the best of my knowledge and belief, the foregoing is true and correct.

Dated: June 7, 2019

_____
Name: Dan Bafia
Title: Chief Operating Officer

-3-

SC1:4953361.2